**EXHIBIT B**

<table>
<tr>
<td>

**DISTRICT COURT, 17TH JUDICIAL DISTRICT, COUNTY OF ADAMS, STATE OF COLORADO**

1100 Judicial Center Drive
Brighton, CO 80601

</td>
<td>

DATE FILED
May 30, 2026 6:07 PM
FILING ID: 429EF4908A654
CASE NUMBER: 2026CV31052

</td>
</tr>
<tr>
<td>

**Plaintiff:**   CATHYRINE ALCAIRO AND
ROQUE ALCAIRO

v.

**Defendant:**   STATE FARM FIRE AND
CASUALTY COMPANY

</td>
<td>

▲COURT USE ONLY ▲

</td>
</tr>
<tr>
<td>

J. Christopher Elliott, Esq., # 41063
BACHUS & SCHANKER, L.L.C.
1801 California Street Suite 4800
Denver, Colorado 80202
Telephone:  (303) 893-9800
Facsimile:  (303) 893-9900
E-mail:     celliott@coloradolaw.net
*Attorney for Plaintiffs*

</td>
<td>

**Case No.:**

**Division:**

**Courtroom:**

</td>
</tr>
<tr>
<td colspan="2" align="center">

**CIVIL COMPLAINT AND JURY DEMAND**

</td>
</tr>
</table>

**TO THE HONORABLE JUDGE OF SAID COURT:**

   **COMES NOW,** Plaintiffs Khalil Zahedi and Nasima Zahedi, hereinafter referred to collectively as "Plaintiffs", by and through their attorneys of record, **Bachus Schanker** and **Storm Law Partners**, and as their Original Complaint against Defendant, State Farm Fire and Casualty Company, respectfully states and alleges as follows:

## PARTIES

   1.    That at all times material hereto, Cathyrine Alcairo and Roque Alcairo owned the property located at 1460 East 96th Drive, Thornton, CO 80229.

   2.    On information and belief that at all material times hereto, Defendant, State Farm Fire and Casualty Company (hereinafter sometimes referred to as "Defendant") was a foreign insurance company engaging in the business of insurance and licensed to write policies in the State of Colorado, in Adams County, Colorado.

---

*Plaintiff's Original Complaint*                                                          Page | 1

**EXHIBIT B**

## JURISDICTION AND VENUE

3.      At all times described in this Complaint, Defendant was engaged in the business of insurance in the State of Colorado.

4.      At all times described in this Complaint, Plaintiffs were insured by Defendant.

5.      All the acts described in this Complaint occurred in the State of Colorado under Colorado law and involve an insurance policy governed by Colorado law.

6.      This Court has personal and subject matter jurisdiction over this case under C.R.S. §§ 13-1-124(1)(a), (c), and (d).

7.      Venue is proper in this district under C.R.C.P. 98(c)(1), which Plaintiffs designate as the place of trial of this action.

## GENERAL ALLEGATIONS

8.      Plaintiffs purchased an insurance policy (hereinafter referred to as "the Policy"), bearing policy number 86-CY-V700-0, which insured the property located at 1460 East 96th Drive, Thornton, CO 80229 (hereinafter referred to as "the Property") at the time of loss from Defendant.

9.      On or about July 20, 2024, Plaintiffs experienced a severe hail and wind-related event that caused substantial damage to the Property and surrounding homes and businesses in the area. The Property's damage constitutes a covered loss under the policy issued by Defendant.

10.      At the time of the loss, the storm in question produced large hailstones indicating most likely impacted the property.

11.      Plaintiffs subsequently opened a claim, associated with Claim No. 06-72Z5-88X, and Defendant assigned a desk adjuster to adjust the claim.

12.      Defendant conducted an inspection of the Property. Defendant made numerous errors in estimating the value of Plaintiffs claim, as exhibited by its assigned adjuster's method of investigation and estimation of Plaintiffs loss, all of which were designed to intentionally minimize and underpay the loss incurred by Plaintiffs. Defendant's assigned adjusters failed to fully quantify Plaintiffs covered losses, thus demonstrating that Defendant's assigned adjusters did not conduct a thorough investigation of Plaintiffs claim and/or intentionally adjusted Plaintiffs claim improperly.

13.      Specifically, Defendant, independently and through its assigned adjusters, intentionally and knowingly conducted a substandard investigation of the Property. This is evidenced by Defendant's estimates, which still—to date—fail to include all necessary items Plaintiffs are entitled to under the Policy to restore the Property to its pre-loss condition. Specifically, Defendant failed to quantify the covered damages to Plaintiffs Property.

# EXHIBIT B

14.     Subsequently, Defendant unreasonably relied upon its adjusters estimate in or to wrongfully underpaid Plaintiff's claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the policy. Specifically, Defendant allowed only $2,562.25 in Replacement Cost Value ("RCV") funds under Dwelling coverage. These amounts fall woefully short of the actual damage that was clearly visible from the Storm. Based on the estimate provided by its assigned adjuster, Plaintiff received $952.53 in Actual Cash Value ("ACV") payments after accounting for depreciation and Plaintiffs' deductible

15.     Defendant wrongfully underpaid Plaintiffs claim and refused to issue a full and fair payment for the covered loss as was rightfully owed under the policy.

16.     Defendant's estimate(s) did not allow for adequate funds to cover the cost of repairs and therefore grossly undervalued all damage sustained to the Property. As a result of Defendant's conduct, Plaintiffs claim was intentionally and knowingly underpaid.

17.     As a result of Defendant's improper investigation, Plaintiffs were forced to engage the professional services of several industry professionals and estimate writers to accurately identify and quantify their losses.

18.     Plaintiffs retained public adjuster Denny Cordle ("Cordle") of Bulldog Adjusters, who advised Defendant that his findings included detailed photographic documentation demonstrating granule displacement in a scattered and non-uniform pattern consistent with hail impact rather than natural aging; fractured and bruised shingles indicative of high-velocity storm impacts rather than long-term deterioration; and dents to soft metal components, including vents and gutters, which were consistent with hail-related damage and not conditions caused by ordinary wear and tear.

19.     As a result of Mr. Cordle's findings, Defendant was requested to reevaluate the claim in light of the evidence provided, including the photographic documentation, weather data, and applicable industry standards and criteria. Defendant was further requested to engage a neutral third-party roofing engineer should any dispute regarding causation remain.

20.     On or about August 30, 2024, Defendant's adjuster, Justyna Kosinska, was provided with Mr. Cordle's findings. Despite the evidence presented, Defendant continued to deny full and fair payment of the claim, concluding that, based upon its discussions with Mr. Cordle, site inspection, and investigation, there was no accidental direct physical loss to the dwelling roof, exterior elevations, or fence attributable to the reported storm event. Defendant instead contended that the observed conditions were the result of ordinary wear and tear and, therefore, excluded from coverage under the Policy.

21.     Thereafter, Plaintiffs retained general contractor Grace Forensic Loss Consultant, Inc. ("Grace Forensic") to assist in evaluating the damage and inspect the Property. Following the inspection, Grace Forensic provided an estimate regarding the necessary repairs to the Property, totaling $50,499.26. Grace Forensic estimate required a full roof replacement of the Property's roofing system. Grace Forensic also recommended several other significant repairs, including, but not limited to: removal and replacement gutters and downspouts; removal and replacement of the roofing system's ice and water shield; removal and replacement of drip edge, and windows.

22.     Due to Defendant's failure to adequately pay the claim, it has been impossible for

Plaintiffs to complete the necessary repairs to restore the Property to its pre-loss condition.

23.     Defendant's assigned adjuster(s) acted as an authorized agent of Defendant. Defendant's assigned adjuster(s) acted within the course and scope of their authority as authorized by Defendant. Plaintiffs relied on Defendant and Defendant's assigned adjuster(s) to properly adjust the claim regarding the covered damage to the Property and to issue payment to fix such damage, which did not happen and has not been rectified to date.

24.     Defendant failed to perform its contractual duties to adequately compensate Plaintiffs under the terms of the Policy.  Specifically, Defendant refused to pay the full proceeds owed under the Policy. Due demand was made by Plaintiffs for proceeds in an amount sufficient to cover the damaged property.

25.     Defendant and/or Defendant's assigned agent(s) sold the Policy to Plaintiffs, making various statements and representations to Plaintiff that the Property would be covered. Relying on the promises and representations made by Defendant and/or Defendant's assigned agent(s), Plaintiffs filed a claim under the Policy with the belief that the Property would be covered after a severe hail and windstorm such as the one that damaged the Property.

26.     Prior to the storm, the severe storm damage described above was not present.

27.     All conditions precedent to recovery under the Policy had, and have, been carried out and accomplished by Plaintiffs.

28.     As a result of Defendant's wrongful acts and omissions, Plaintiffs were forced to retain the professional services of Storm Law Partners, which represent Plaintiffs with respect to these causes of action.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract by Defendant)

29.     Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

30.     At the time of the storm, Plaintiffs were entitled to coverage by a contract of insurance with Defendant, under the Policy, which insures the Property.

31.     The subject insurance contract provided Defendant would pay for damages, which an insured is legally entitled to recover from a covered peril.

32.     Hailstorm damage is a covered loss under the Policy.

33.     The damage caused by the hailstorm described above constitutes a covered loss under the Policy.

34.     Defendant breached its contract by, among other things, failing to pay Plaintiffs for their losses.

35.     Defendant did not pay what the Policy required, because Defendant wrongfully and

unreasonably determined, without a reasonable basis, that the Property's hail damage was insufficient to warrant a more fully investigated claim, and failed to provide the actual, necessary, and reasonable cost of repair or replacement to the Property for covered losses.

36.     Without limitation, Defendant failed to provide sufficient funds to repair the damage to Plaintiffs Property.

37.     Such failures constitute a breach of contract.

38.     As a direct consequence of Defendant's actions and/or inactions and breach of contract, Plaintiffs have suffered damages for which Defendant is legally liable, as well as additional litigation costs and attorneys' fees in amounts to be determined at trial.

## SECOND CLAIM FOR RELIEF

### (Bad Faith Claim - Breach of Contract by Defendant)

39.     Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

40.     By virtue of the special nature of the insurance contract and the relationship between Plaintiffs and Defendant, Defendant owed Plaintiffs the duty of good faith and fair dealing in handling their claim. *Cary v. United of Omaha Life Ins. Co.*, 68 P.3d 462, 466 (Colo. 2003). The basis of this liability is the insurer's conduct in unreasonably refusing to pay a claim and failing to act in good faith. *Goodson v. Am. Standard Ins. Co.* 89 P.3d 409, 414 (Colo. 2004).

41.     Defendant breached its duty of good faith and fair dealing and acted in bad faith toward its insured, Plaintiffs, in that it negligently, improperly, and/or unreasonably handled the claim and failed to properly investigate, evaluate, negotiate, and/or settle the claim when it could have or should have done so under the circumstances, had it acted fairly, honestly, and with due regard for Plaintiffs' interests.

42.     Defendant owed a legal duty to Plaintiffs to act in a timely manner, to reasonably investigate and determine the amounts due and owing, to avoid unnecessary delays, to not unreasonably force Plaintiffs to litigate or seek legal remedies to obtain their entitled benefits unreasonably, and to not force Plaintiffs to incur unwarranted or excessive costs in seeking such benefits.

43.     Defendant has acted in bad faith against Plaintiffs and Plaintiffs' interests by breaching its contract and contractual duties owed to Plaintiffs. Defendant engaged in this conduct by failing to pay benefits that it knows or should know Plaintiffs are entitled to receive, causing unnecessary delays, and forcing Plaintiffs to seek legal action to enforce their right to benefits, thereby causing Plaintiffs to incur unreasonable costs and delays to their detriment.

44.     As a direct consequence of Defendant's bad faith breach of contract, Plaintiffs have suffered damages for which Defendant is legally liable, as well as additional litigation costs and attorneys' fees in amounts to be determined at trial.

### THIRD CLAIM FOR RELIEF

**(Improper Denial of Claims and Remedies for the
Unreasonable Delay or Denial of Benefits – Violations of C.R.S. §§ 10-3-1115 and 1116)**

45.     Plaintiffs hereby incorporate by reference all facts and circumstances set forth under the foregoing paragraphs.

46.     At all times described in this Complaint, the following statute of the State of Colorado was in effect:

> **§ 10-3-1115. Improper denial of claims--prohibited-- definitions--severability**
>
> (1)(a) A person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of any first-party claimant.

47.     C.R.S. § 10-3-1116(1) provides a remedy for such denial or delay of payments in the form of "reasonable attorney fees and court costs and two times the covered benefit."

48.     Among other things, Defendant unreasonably denied payment of insurance benefits owed to Plaintiffs by failing to pay the actual, necessary, and reasonable funds to repair and/or replace damaged portions of the Property caused by the storm described above.

49.     Defendant based this denial on, among other things, an unreasonable determination that the Property's roofing system revealed little to no signs of wind or hail damage, when, in fact, significant hail damage did occur. Defendant's determination was in turn based on its unreasonable reliance on its assigned adjuster(s)' investigations, which contained flawed methodology and an improper standard for what constitutes "damage" to the roofing system and other exterior damages.

50.     Defendant has unreasonably denied and delayed payment to Plaintiffs in violation of C.R.S. § 10-3-1115(1)(a).

51.     Defendant is subject to the provisions of C.R.S. § 10-3-1116(1) for "reasonable attorney fees and court costs and two times the covered benefit" in addition to damages claimed elsewhere in this Complaint.

**WHEREFORE**, Plaintiffs respectfully request that this Honorable Court enter an Order of Judgment in their favor and against Defendant awarding Plaintiffs damages in an amount to fairly and reasonably compensate them for their damages as set forth herein above; including but not limited to actual and consequential damages, statutory damages pursuant to CRS § 10-3-1116, exemplary damages, attorneys' fees, costs, pre-judgment and post-judgment interest as allowed by law, and for other and further relief as this Court deems just and proper.

**EXHIBIT B**

**PLAINTIFFS DEMANDS A TRIAL BY JURY ON ALL ISSUES TRIABLE.**

Respectfully submitted this 30th day of May, 2026.

BACHUS & SCHANKER, LLC

*/s/ J. Christopher Elliott*
J. Christopher Elliott, Esq., No. 41063

*Attorney for Plaintiffs*